(C. D. 931)

GEO. S. BUSH & CO., INC. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided June 20, 1945)

*Lawrence & Tuttle* (*George R. Tuttle* and *Henry L. Ziegel* of counsel) for the plaintiff.

*Paul P. Rao*, Assistant Attorney General (*William J. Vitale, Daniel I. Auster, Dorothy C. Bennett, Samuel D. Spector*, and *Herbert M. Rosenberg*, special attorneys), for the defendant.

Before TILSON and KINCHELOE, Judges; LAWRENCE, J., not participating

TILSON, Judge: This suit against the United States brings before us for consideration and determination the question of the proper classification of certain imported merchandise which was classified under paragraph 1535 of the Tariff Act of 1930 and duty levied thereon at the rate of 55 per centum ad valorem, and also certain other imported merchandise which was classified under paragraph

(1)

1211 of the said act, and duty levied thereon at the rate of 65 per centum ad valorem.

The plaintiff makes the following claims for lower rates of duty:

\* \* \* SILK ARTIFICIAL GUT, assessed at 65%, par. 1211, is dutiable:

1. At 45% or 55% under par. 1533 (leaders, etc. unfinished)
2. At 40% under par. 1204 (silk threads or yarns)
3. At the rates specified in par. 1202 (silk yarns, etc.)
4. At 35% under par. 1201 (silk not twisted or spun)
5. At 20% under par. 1203 (thrown silk)

NATURAL SILK GUT OR NATURAL GUT (TEGUSU), assessed at 55% par. 1535, is dutiable:

1. At 40% under par. 1533 (mfrs. of gut)
2. At 45% under par. 1535 (fishing tackle or parts thereof, etc.)
3. Free of duty under par. 1813 (worm gut, unmanufactured)

It is further claimed that duty should have been imposed at the rate of 10 per centum or 20 per centum under paragraph 1558, or at the rate at which entered, or at the rates prescribed by any of the provisions above cited, by virtue of section 502 (c), or of the similitude or the mixed-material clause in paragraph 1559. \* \* \*.

The paragraphs of the Tariff Act of 1930 under which the merchandise is claimed to be properly dutiable, so far as here pertinent, read as follows:

PAR. 1533. Catgut, whip gut, oriental gut, and manufactures thereof, and manufactures of worm gut, not specially provided for, 40 per centum ad valorem.

PAR. 1204. Sewing silk, twist, floss, and silk threads or yarns of any description, made from raw silk, not specially provided for, 40 per centum ad valorem.

PAR. 1202. Spun silk or schappe silk yarn, or yarn of silk and rayon or other synthetic textile, and roving, not bleached, dyed, colored, or plied, 40 per centum ad valorem; bleached, dyed, colored, or plied, 50 per centum ad valorem.

PAR. 1201. Silk partially manufactured, including total or partial degumming other than in the reeling process, from raw silk, waste silk, or cocoons, and silk noils exceeding two inches in length; all the foregoing, if not twisted or spun, 35 per centum ad valorem.

PAR. 1203. Thrown silk not more advanced than singles, tram, or organzine, 20 per centum ad valorem.

PAR. 1535. Artificial flies, snelled hooks, leaders or casts, finished or unfinished, 55 per centum ad valorem; fishing rods and reels, and parts thereof, finished or unfinished, not specially provided for, 55 per centum ad valorem; fish hooks, artificial baits, and all other fishing tackle and parts thereof, fly books, fly boxes, fishing baskets or creels, finished or unfinished, not specially provided for, except fishing lines, fishing nets, and seines, 45 per centum ad valorem: \* \* \*.

PAR. 1813. Worm gut, unmanufactured. (Free List)

PAR. 1558. That there shall be levied, collected, and paid on the importation of all raw or unmanufactured articles not enumerated or provided for, a duty of 10 per centum ad valorem, and on all articles manufactured, in whole or in part, not specially provided for, a duty of 20 per centum ad valorem.

PAR. 1559. That each and every imported article, not enumerated in this Act, which is similar, either material, quality, texture, or the use to which it may be applied to any article enumerated in this Act as chargeable with duty, shall be subject to the same rate of duty which is levied on the enumerated article which it most resembles in any of the particulars before mentioned; \* \* \*.

It will be noted that a portion of the merchandise was classified and assessed with duty under paragraph 1535 at the rate of 55 per centum ad valorem, which paragraph is set out above, and the remainder of the merchandise was classified and assessed with duty at 65 per centum ad valorem under paragraph 1211, which reads as follows:

PAR. 1211. All manufactures, wholly or in chief value of silk, not specifically provided for, 65 per centum ad valorem.

The appraiser's report in answer to the protest, which was filed within the prescribed time and is therefore a part of the official record before us (*Bonwit Teller* v. *United States*, 19 C. C. P. A. 238) reads as follows:

The merchandise consists of:
1. So-called artificial gut, or artificial tegusu, in lengths of 10 to 100 yards, composed of raw silk fibers impregnated and covered with what appears to be a casein or cellulose compound. It is imported in single strands in sizes from one-half to 75-lb. test. It is suited for use and is used as fishing line and also as material in the manufacture of fishing leaders. Advisory return for duty was made as a manufacture of silk at 65% ad valorem, paragraph 1211, Act of 1930; note Abstract 16358.
2. So-called natural silk gut, or tegusu, in lengths of 5 to 7 feet, coiled individually or in bundles of 10 or 100 pieces. On analysis it was reported by the chemist as not worm gut or cat gut, but a manufactured gut made by special process and containing no silk. So far as known, this merchandise is used exclusively for fishing leaders or casts. Advisory return for duty was therefore made at 55% ad valorem, paragraph 1535, Act of 1930.

Since paragraph 1533 does not carry a rate of duty of either 45 or 55 per centum ad valorem, and does not cover "leaders, etc. unfinished" we need give no consideration to the claim under this paragraph as to the merchandise which was assessed with duty at 65 per centum ad valorem under paragraph 1211.

During the trial of this case counsel for the plaintiff offered and there were received in evidence herein the records in *American Import Co.* v. *United States*, 26 C. C. P. A. 72; *United States* v. *Bush*, 29 C. C. P. A. 241, and *Bush* v. *United States*, Abstract 20714, including the record in *Takeuchi Bros.* v. *United States*, 20 C. C. P. A. 427, and the record in *Okuda* v. *United States*, 21 C. C. P. A. 100. In addition to the above, the present record consists of the testimony of 8 witnesses and 35 exhibits, illustrative exhibits, and collective exhibits.

In each of the above cases the merchandise was the same or similar to that here involved. It will thus be seen that the subject of this suit is one concerning which there has been extensive litigation, the latest pronouncement upon the subject by our appellate court being found in *United States* v. *Bush, supra.*

Since the record shows that none of the merchandise in this case consists of "Worm gut, unmanufactured," such as is accorded free

entry under paragraph 1813, no further consideration need be given to that claim.

According to the decision in the *Bush* case, *supra*:

The merchandise involved in this appeal is invoiced as "single silk fishing line" and is referred to throughout the record as "artificial fishing gut" or "silk gut" and is made by coating silk threads or strands with a composition of formalin and gelatin. The merchandise was imported in 1928 in lengths of from 10 to 100 yards and in strengths of from ½-pound test to 150-pound test. As imported it is not dyed. In this country most of it is dyed. Approximately 2 per centum of the same is sold undyed. After importation it is used either as fishing lines or as material for making fishing leaders, the leader use predominating. In this country, some of the imported "silk gut" is dyed, cut into shorter lengths (from 3 to 6 feet) and loops are tied into it.

Based upon the testimony of the examiner who examined the merchandise in the *Bush* case, *supra*, and also the merchandise in the instant case, that the merchandise in the former case was similar in all material respects to exhibits 5 and 6 in the instant case, these exhibits representing the merchandise which was assessed at 65 per centum under paragraph 1211, the record in the *Bush* case, *supra*, was admitted in evidence in this case. In the instant case there is additional evidence not present in the *Bush* case, *supra*, with reference to exhibits 5 and 6 and the merchandise in this case represented by said exhibits. In our opinion, however, this additional evidence is not sufficient to remove the merchandise which was assessed with duty at 65 per centum under paragraph 1211 from the classification accorded by our appellate court to such or similar merchandise in the *Bush* case, *supra*.

In the *Bush* case, *supra*, our appellate court said:

Insofar as it was the burden of appellee, when it appealed from the decision of the collector to the United States Customs Court to not only prove that the collector was wrong, but that one of its claims was meritorious, it might be suggested that it is unnecessary for us to pass upon the question as to whether or not the merchandise was properly assessed by the collector under paragraph 1211. Appellee took no cross-appeal from the holding of the trial court that the merchandise was dutiable at 40 per centum, and under such circumstances could not here obtain a more favorable judgment, to wit, 20 per centum as a nonenumerated manufactured article. See *United States* v. *F. W. Myers & Co., Inc.*, 29 C. C. P. A. (Customs) 30, C. A. D. 168. Ordinarily under such circumstances, we would reverse the judgment of the trial court without approving or disapproving the classification of the collector. In the present instance, however, we feel called upon to pass upon the issue as to whether or not the merchandise is properly dutiable as assessed by the collector for the reasons, first, that we think it has a direct bearing on the construction to be given to paragraph 1204, and second, that there have been a number of attempts to present this issue to this court but in each instance unfortunately, because of the manner in which the case was presented or decided, it was not necessary to pass upon this question, and we think it entirely proper under the circumstances, to decide this issue at this time. Useless litigation should be discouraged. See *United States* v. *Didier-March Co.*, 2 Ct. Cust. Appls. 436, T. D. 32198.

. Speaking with particular reference to the merits of the case,. our appellate court said:

The imported articles, however, have been advanced to a condition. where they either serve as lines or go into the making of leaders. A leader is a short line attached to the main fishing line, and in most instances may be regarded as an extension of the line. It holds the hook or lures manipulated by the fisherman through the use of the line. A fishing line of gut or silk and a fishing leader of gut or silk are surely in the same class. *Therefore, in the instant case, when , the original material had reached the point of advancement where it was dedicated to a certain class of uses, it became a manufacture of silk.* [Italics ours.]

In passing upon the scope of paragraphs 1204, 1211, and 1459 with particular reference to the merchandise in the *Bush* case, *supra*,. our appellate court observed:

* * * Nevertheless, the character of the articles which Congress enumerated in the paragraph [1204] and the specific advancement named therein, we think,. suggest that it did not intend to include merchandise like that at bar in paragraph 1204 but did intend that it fall within paragraph 1211 so as to be dutiable at a, higher rate of duty than was provided for under paragraph 1204 or the non-enumerated paragraph 1459.

From the above quotations from the *Bush* case it appears to us . that our appellate court was therein endeavoring to settle all issues relative to the merchandise there involved, and since the merchandise in the present case is such as or similar to that involved in the *Bush* case, *supra*, we follow our appellate court and overrule all the claims in this suit as to all the merchandise which was assessed with duty at 65 per centum ad valorem under paragraph 1211 of the Tariff Act of 1930.

As to the merchandise which was assessed with duty at 55 per centum ad valorem under paragraph 1535, as leaders or casts, the examiner who examined this merchandise testified for the plaintiff that: "It is a so-called natural silkworm gut, in lengths of 5 to 7 feet." "The form, as I stated, was lengths of approximately 5 to 7 feet of a gut-like material, in varying diameters." With reference to this merchandise one witness testified for the plaintiff as follows:

Q. That is, on each of these pieces of material there is a portion that you call the "white part"?

A. Yes, the white part, that is no good. You have to take the clear part, that is, the clear part to make it so it won't show up very large in the water; more of a clear part.

Q. Yes? Then you simply soak them, remove by cutting the white part?—A. Yes.

Q. And then tie the article into the form of a leader?—A. Yes, but you have to test it first.

* * * * * * *

Q. Have you yourself taken them from the store as a fisherman to use yourself in the condition as imported?—A. Yes, sir.

Q. And before using them, did you then yourself, make them into a leader in the manner you have just described?—A. Sometimes I made them out of—I have

maybe four, or five, or six made up and then I take a bundle of those and put them in my kit and when I run out and lose all my leaders I start working on those and make up some more.

&ast; &ast; &ast; &ast; &ast; &ast;

X Q. And you use merchandise similar to this in casting, also, don't you?—A. Yes, sir.

X Q. Without anything else, is that right?—A. Well, I have to have a hook.

X Q. Except the hook or worm?—A. A hook or whatever you want. You have a loop on that and fasten to your lines. Sometimes you have to put weight on that to get it down.

X Q. So, that, wouldn't you say, then, in your opinion each of these items represent a cast?—A. They represent a leader, unfinished leader.

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

R. X Q. And when you buy at wholesale do you refer to these as spinning leaders?—A. For trout and spinning leaders; both.

Counsel for the plaintiff cites and relies upon *American Import Co.* v. *United States*, 26 C. C. P. A. 72, as supporting his contention that this particular merchandise is not "leaders or casts, finished or unfinished." In that case the merchandise was imported in 60-foot lengths with nothing to indicate where it was to be cut in order to make a leader. In our decision in the *American Import Co.* case, T. D. 48802, we said:

&ast; &ast; &ast; it might be stated that if the merchandise in this case were in lengths, as imported, of from three to six feet, or from six to thirty-six inches, we would experience no difficulty in holding it dutiable as unfinished leaders, but it should be remembered that the merchandise in this case, as imported, was in lengths of sixty feet, without any line or mark indicating where the same is to be cut in order to make it into a finished or unfinished leader.

Counsel for the plaintiff, in his brief filed herein, cites, as supporting his position, the case of *Bauer's* v. *United States*, Abstract 25414. In view of the fact that the merchandise, as imported, in the *Bauer's* case, *supra*, was not in lengths of sixty feet, but had been cut to definite lengths of from five to seven feet, we see nothing inconsistent with the contention of the defendant that the merchandise in the *Bauer's* case, *supra*, being cut to definite lengths of from five to seven feet, was unfinished leaders, and its contention in this case, that the merchandise, being in sixty-foot lengths, is not leaders, either finished or unfinished.

In the instant case the merchandise now under consideration was imported in lengths of from 5 to 7 feet, and the record shows that these lengths are suitable for, and are actually used in making leaders by making a loop in each end, attaching a hook to one end and attaching the other end to the fishing line. This brings this merchandise squarely within the decision of this court in the *Bauer's* case, Abstract 25414, and also within our reasoning in the *American Import Co.* case, *supra*, which latter decision was affirmed by our appellate court in *American Import Co.* v. *United States, supra*. We therefore hold that this class of merchandise was properly classified by the collector under paragraph 1535 of the Tariff Act of 1930.

For the reasons stated and following the cited authorities we overrule all the claims of the plaintiff. Judgment will be rendered accordingly.